# United States Court of Appeals

## For the First Circuit

No. 12-1434

EBENEZER JACKSON BEAD,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin[*] and Stahl, Circuit Judges.

Gregory C. Osakwe on brief for petitioner.
Robert Michael Stalzer, Trial Attorney, United States
Department of Justice, Office of Immigration Litigation, Stuart F.
Delery, Acting Assistant Attorney General, Civil Division, and
Thomas B. Fatouros, Senior Litigation Counsel, Office of
Immigration Litigation, on brief for respondent.

January 7, 2013

---

[*] Judge Boudin heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C.
§ 46(d).

**STAHL**, <u>Circuit Judge</u>. In 2007, an Immigration Judge (IJ) ruled that petitioner Ebenezer Jackson Bead had abandoned his asylum application by failing to provide biometric information to the Department of Homeland Security (DHS). Three years later, Bead moved to reopen his case, arguing that he had received ineffective assistance of counsel. We agree with the Board of Immigration Appeals (BIA) that Bead's motion to reopen was untimely, and we therefore deny the petition for review.

## I. Facts & Background

Bead, a native and citizen of Liberia, entered the United States without inspection on an unknown date. In April 2003, he filed for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He was referred into removal proceedings in September 2003. Bead appeared without counsel at two initial master calendar hearings. At a third master calendar hearing in October 2004, he appeared with an attorney. Bead conceded his removability, and the IJ scheduled a merits hearing for December 2006 to adjudicate Bead's applications for asylum, withholding of removal, and CAT protection. She also reminded Bead to get his fingerprints taken.

In February 2006, the IJ directed Bead's attorney to provide proof, by May 15, 2006, that Bead had submitted biometric and biographical information to DHS, as required by 8 C.F.R. § 1003.47. There was no response. As a result, in February 2007,

-2-

the IJ found that Bead had abandoned his asylum application, see id. § 1003.47(c), and ordered him removed to Liberia. Bead did not appeal that decision.

In February 2010, Bead moved to reopen his case, arguing that he had received ineffective assistance from his prior counsel, who had failed (Bead said) to submit the biometric information and to notify Bead that he had been ordered removed. Bead attached an affidavit, which explained that he did not learn of the removal order until June 2009, when, after attempting in vain to contact his prior counsel, he obtained new counsel, who inquired about the status of the case. The affidavit further stated that Bead had filed a bar complaint against his prior counsel in July 2009. Also attached to the motion were the bar complaint and Bead's prior counsel's responses thereto, which asserted that Bead had hired him only for the October 2004 master calendar hearing and had not paid him for that appearance. Bead's prior counsel claimed that Bead had confessed to him that he had lied in his asylum application and that he planned to abandon the application rather than risk discovery of that deception. Finally, Bead's prior counsel stated that, upon receiving the removal order, he had given Bead a copy in person. DHS did not file a response to Bead's motion to reopen.

The IJ denied the motion as untimely, because Bead had filed it beyond the ninety-day limit established by 8 C.F.R. § 1003.23(b)(1). She noted that this court has not yet decided

whether equitable tolling is available in the immigration context, but has held that, if so, tolling would be unavailable if the petitioner has failed to exercise due diligence in pursuing his case. See Nascimento v. Mukasey, 549 F.3d 12, 18 (1st Cir. 2008). She concluded that Bead had failed to demonstrate due diligence, because he was present when his merits hearing was scheduled for December 2006 and neither took action to pursue his case before that date had passed, nor took steps to follow the court's direction to have his fingerprints taken. She also found that, even if Bead had learned of the removal order in June 2009 (as he said), and not when it was issued (as his prior counsel said), his unexplained delay in filing the motion to reopen until late February 2010 further established a lack of diligence.[1]

The BIA affirmed, agreeing with the IJ that, even if the equitable tolling doctrine applied, Bead had not established due diligence, because he had failed to explain: (1) the three-year delay between the issuance of the removal order and the filing of his motion to reopen; or (2) the eight-month delay between his alleged discovery of the removal order and the filing of his motion to reopen. Bead now petitions for our review of that ruling.

---

[1] The IJ also concluded that Bead had failed to show a reasonable probability of prejudice, see Aponte v. Holder, 683 F.3d 6, 15 (1st Cir. 2012), given his prior counsel's allegations that Bead planned to abandon his asylum application. We do not address that finding here, since the BIA did not reach it. See Ouk v. Keisler, 505 F.3d 63, 67 (1st Cir. 2007) (limiting our review to those portions of the IJ's opinion that the BIA adopted).

## II. Analysis

"The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." Kucana v. Holder, 130 S. Ct. 827, 834 (2010) (quoting Dada v. Mukasey, 554 U.S. 1, 18 (2008)). However, the BIA enjoys "broad discretion" in deciding motions to reopen, and the courts therefore employ "a deferential, abuse-of-discretion standard of review." Id. (quoting INS v. Doherty, 502 U.S. 314, 323 (1992)) (internal quotation marks omitted). Thus, Bead must "show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). We review the BIA's decision and "those portions of the IJ's opinion that the BIA has adopted." Ouk v. Keisler, 505 F.3d 63, 67 (1st Cir. 2007) (citation and internal quotation marks omitted).

A motion to reopen removal proceedings must be filed within ninety days of the final administrative decision, unless the motion: (1) seeks rescission of an in absentia removal order; (2) alleges changed country conditions; (3) is joined and agreed upon by all parties; or (4) is filed by DHS. See 8 C.F.R. § 1003.23(b)(1), (4). In his brief on appeal, Bead alludes to exemptions one and three, but neither is applicable here. Exemption one does not apply because Bead's removal order was not in absentia. The in absentia hearing procedures are governed by 8

-5-

U.S.C. § 1229a, while the IJ's authority to find a petitioner's claims abandoned or waived derives from the regulations, e.g., 8 C.F.R. §§ 1003.31, 1003.47.  Those determinations have different substantive requirements, and there is nothing in either the regulations or the statute to suggest that they are interchangeable.  Compare 8 U.S.C. § 1229a(b)(5)(A) (authorizing removal in absentia where a petitioner "does not attend a proceeding" and is shown by clear and convincing evidence to be removable), with 8 C.F.R. § 1003.47(c) (authorizing dismissal of an application for failure to provide biometric and biographical information); accord Williams-Igwonobe v. Gonzales, 437 F.3d 453, 456 (5th Cir. 2006).  As for exemption three, while 8 C.F.R. § 1003.23(b)(1)(iv) required the IJ to treat Bead's motion to reopen as unopposed because DHS did not respond to it, the motion certainly was not "agreed upon by all parties and jointly filed," id. § 1003.23(b)(4)(iv).[2]

---

[2] Equally lacking in merit is Bead's claim that the IJ and BIA were not permitted to deny his motion to reopen because DHS never responded to it.  The regulations place the burden on the petitioner to prove that reopening is appropriate, without any exception for unopposed motions, and vest discretion in the IJ to determine whether such a motion should be granted.  See, e.g., 8 C.F.R. § 1003.23(b)(1)(iv) (stating that "[a] motion shall be deemed unopposed unless timely response is made" but that "[t]he decision to grant or deny a motion to reopen . . . is within the discretion of the Immigration Judge"); id. § 1003.23(b)(3) ("The Immigration Judge has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief."); cf. Sousa v. Ashcroft, 393 F.3d 271, 273, 275 (1st Cir. 2005) (affirming the denial of a motion to reconsider where DHS had failed to oppose the motion below).

That leaves Bead's argument that he should have the benefit of the equitable tolling doctrine, which "provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitations period." Nascimento v. Mukasey, 549 F.3d 12, 18 (1st Cir. 2008) (citation and internal quotation marks omitted). We have yet to decide "whether the BIA has either the authority or the obligation to apply equitable tolling in the immigration context." Id. (citation and internal quotation marks omitted). We have, however, said that if the equitable tolling doctrine is available to circumvent the statutory provision limiting motions to reopen, it generally requires a petitioner to demonstrate that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way." Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

The BIA did not abuse its discretion in finding that Bead had not diligently pursued his rights. See Kucana, 130 S. Ct. at 834. Bead was present at the October 2004 master calendar hearing, when the IJ scheduled his merits hearing for December 2006 and directed him to get his fingerprints taken. The alleged ineffective assistance began in May 2006, when Bead says his prior counsel failed to submit the required biometric information. Bead's affidavit provides no information about what, if any, steps

he took to determine the status of his case until June 2009, when he contacted a new attorney, almost five years after the master calendar hearing. Bead's statement in his affidavit that he "relied entirely on [his prior counsel] to advise [him] in [his] removal hearing and file whatever documents [were] required," is simply inadequate to demonstrate due diligence. See Jobe v. INS, 238 F.3d 96, 101 n.8 (1st Cir. 2001) (noting that the petitioner "bears the burden of making a prima facie showing of entitlement to equitable tolling, and therefore of filling in any gaps in the record regarding whether his is a case warranting equitable relief").

The affidavit is also silent as to what, if any, communications Bead exchanged or tried to exchange with his prior counsel during the five-year period between the master calendar hearing and his consultation with a new attorney. It merely says that he eventually contacted a new attorney "after trying in vain" to reach his prior counsel. See Neves, 613 F.3d at 37 (affirming the denial of a motion to reopen where the petitioner failed to provide any details regarding "the dates or frequency of [his] contacts" with his attorney over a three-year period between the decision and his discovery of the ineffective assistance). Nor does Bead's affidavit address why he then waited eight more months to file a motion to reopen after learning of the removal order. Those numerous unexplained delays foreclose any finding "that the

[BIA] committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza, 484 F.3d at 127.

The remainder of Bead's arguments on appeal are not properly before us, because he failed to raise them before the BIA. See 8 U.S.C. § 1252(d)(1); Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) ("Under the exhaustion of remedies doctrine, theories insufficiently developed before the BIA may not be raised before this court."). They include: (1) Bead's claim that Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), required him to wait for his prior counsel's response to his bar complaint before filing the motion to reopen;[3] (2) his contradictory claim (raised for the first time in his reply brief) that Lozada actually does not apply here, because the case should be governed either by the good-cause standard in 8 C.F.R. § 1003.47(d) or by the exception to Lozada articulated in Escobar-Grijalva v. INS, 206 F.3d 1331 (9th Cir.), amended by 213 F.3d 1221 (9th Cir. 2000); and (3) his argument that his due process rights were violated under Saakian v. INS, 252 F.3d 21 (1st Cir. 2001), because his ineffective assistance claim was never adjudicated on the merits.

Finally, Bead challenges the IJ's February 2007 dismissal of his application, but we lack jurisdiction to review that order,

---

[3] In any event, Bead's Lozada argument does not explain the further four-month delay between his prior counsel's October 2009 response to the bar complaint and the February 2010 filing of Bead's motion to reopen.

because Bead never appealed it to the BIA.  See 8 U.S.C. § 1252(d)(1).

## III. Conclusion

For the foregoing reasons, we <u>deny</u> the petition for review.