**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1302
_____


JOAQUIN TELLEZ-CRUZ,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 078-494-569)
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
December 7, 2021
_____

Before: SHWARTZ, PORTER, and FISHER,
*Circuit Judges*.

(Opinion Filed:  December 22, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Joaquin Tellez-Cruz, a citizen of Mexico, petitions for review of a Board of Immigration Appeals ("BIA") order denying his motion to reopen his removal proceeding sua sponte. Tellez-Cruz argues that this Court's opinion in *Guadalupe v. Attorney General* provides an extraordinary circumstance sufficient to justify equitable tolling of the 90-day deadline to move to reopen. 951 F.3d 161 (3d Cir. 2020); 8 U.S.C. § 1229a(c)(7)(C)(i). Because the BIA did not abuse its discretion when it declined to apply equitable tolling, we will deny the petition for review.

I

Tellez-Cruz entered the United States unlawfully. Two years later, the Immigration and Naturalization Service (whose functions are now under Department of Homeland Security) issued him a putative notice to appear in immigration court for removal proceedings, which ordered him to appear "on a date to be set at a time to be set." A.R. 175–76. He later received a notice of hearing with a date and time to appear. Tellez-Cruz appeared for his hearing and was removed to Mexico in 2000 under a final removal order. Tellez-Cruz waived appeal. In 2003, Tellez-Cruz re-entered the United States without inspection. Immigration and Customs Enforcement ("ICE") placed Tellez-Cruz under an order of supervision, requiring him to request annual or bi-annual stays of removal to avoid deportation. In 2018, ICE denied Tellez-Cruz's application for a stay of removal and ordered him to appear at the ICE Philadelphia Field Office for physical removal.

Eighteen years after his removal, Tellez-Cruz filed his first motion to reopen, reconsider, and terminate removal proceedings. Tellez-Cruz argued that the Supreme Court's decision in *Pereira v. Sessions* established that his 2000 notice to appear was defective and jurisdiction never vested with the Immigration Judge ("IJ"). 138 S. Ct. 2105 (2018). An IJ denied his motion, and the BIA affirmed.

Tellez-Cruz then filed his second motion to reopen, reconsider, and terminate removal proceedings with the BIA. Tellez-Cruz argued that, under *Guadalupe*, jurisdiction never vested with the IJ or the BIA. Alternatively, Tellez-Cruz asked that the BIA remand his case so he could apply for cancellation of removal. The BIA declined to equitably toll the filing deadline, rejected his motion as untimely, and declined to exercise its sua sponte authority to reopen.

This petition for review followed. Tellez-Cruz argues that the BIA abused its discretion in failing to equitably toll the 90-day statutory deadline to file his motion, filed two decades after the execution of his removal order.

II

The BIA's jurisdiction arose under 8 C.F.R. § 1003.2(a), which grants the BIA jurisdiction to reopen any proceeding in which it rendered a decision. This Court's jurisdiction to review final removal orders is governed by 8 U.S.C. § 1252(a), which confers exclusive jurisdiction on the courts of appeals to review final orders of removal. Because removal proceedings before the IJ were completed in Pennsylvania, venue is proper in this Court. 8 U.S.C. § 1252(b).

III

3

The Court reviews the denial of a motion to reopen for abuse of discretion, *Huang v. Att'y Gen*. 620 F3.d 372, 390 (3d Cir. 2010), and will disturb the BIA's denial of a motion to reopen only if it was "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)). Motions to reopen are disfavored due to the "strong public interest in bringing litigation to a close." *INS v. Abudu*, 485 U.S. 94, 107 (1988). They are particularly disfavored in immigration proceedings. *INS v. Doherty*, 502 U.S. 314, 323 (1992).

An alien may file one motion to reopen within 90 days of his final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). As a non-jurisdictional claim processing rule, the time bar may be equitably tolled. *See Alzaarir v. Att'y Gen.*, 639 F.3d 86, 90 (3d Cir. 2011). Equitable tolling generally requires an individual to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). "Although claims for equitable tolling typically arise in conjunction with claims of ineffective assistance of counsel, . . . claims based on changes in the law are not unheard of, nor are they prohibited." *Lona v. Barr*, 958 F.3d 1225, 1230–31 (9th Cir. 2020).

IV

Tellez-Cruz argues that, because *Guadalupe* established that a deficient notice to appear does not trigger the "stop-time" rule, he has now accrued over ten continuous

years of physical presence in the United States.[1] 8 U.S.C. § 1229b(b)(1)(A). And because Tellez-Cruz is now eligible for discretionary relief in the form of cancellation of removal, he argues that the BIA abused its discretion when it denied his motion as untimely. Tellez-Cruz does not challenge the BIA's decision to not exercise its sua sponte authority to reopen. Thus, the sole issue before the Court is whether the BIA abused its discretion in declining to equitably toll Tellez-Cruz's deadline based on this Court's decision in *Guadalupe*. It did not.

Tellez-Cruz asserts that a change in law constitutes "extraordinary circumstances" warranting equitable tolling. But Tellez-Cruz has cited no authority suggesting that the BIA abused its discretion when it declined to reopen a two-decade-old case based on recent case law. The cases Tellez-Cruz cites support only the proposition that the BIA possesses discretion to reopen proceedings sua sponte based on intervening case law. *See In re Vasquez-Muniz*, 23 I. & N. Dec. 207, 208 (BIA 2002) (sua sponte reopening); *In re G-D-*, 22 I. & N. Dec. 1132, 1132–33 (BIA 1999) (same). But the BIA's discretion to reopen cases sua sponte is irrelevant to whether the BIA *abuses* its discretion when it refuses to equitably toll the time bar to statutory motions to reopen. *See Lona*, 958 F.3d at 1238 ("Not every circumstance involving a change in the law . . . warrants

---

[1] "To be eligible for cancellation of removal, an alien must accrue 10 years of continuous physical presence in the United States immediately preceding the date of the application for cancellation. That continuous physical presence ceases to accrue, however, when the alien is served a notice to appear under section 1229(a). This is known as the 'stop-time rule.'" *Nkomo v. Att'y Gen.*, 930 F.3d 129, 132 (3d Cir. 2019) (internal quotation marks and citations omitted).

reconsideration of the individual's final removal order or reopening of removal proceedings.").

Even if a change in law could constitute an extraordinary circumstance warranting equitable tolling, the BIA was well within its discretion to decline equitable tolling here. First, the parties agree that Tellez-Cruz filed his second motion nearly two decades after his removal order. *See Omar v. Lynch*, 814 F.3d 565, 570 (1st Cir. 2016) (holding that the BIA did not abuse its discretion when it determined that emerging precedent "did not constitute the kind of extraordinary circumstance that would warrant [equitable tolling] eleven years after the time for filing had passed"). Tellez-Cruz was actually removed in 2000 under that removal order, and the BIA has a strong interest in finality, particularly with final, executed removal orders. *See Abudu*, 485 U.S. at 95 (noting the "particularly [] strong public interest" in bringing litigation to a close expeditiously in removal context); *cf. In re Fine Paper Antitrust Litig.*, 840 F.2d 188, 194 (3d Cir. 1988) (holding that final money judgment may not be reopened years after time for appeal has expired because of a favorable legal ruling in some other party's appeal).

Second, *Guadalupe* did not affect Tellez-Cruz's removability because a defective notice to appear still vests jurisdiction with the IJ. *See Nkomo v. Att'y Gen.*, 930 F.3d 129, 134 (3d Cir. 2019). Therefore, the IJ had jurisdiction to enter the removal order in Tellez-Cruz's case, and the order remains valid. Given the BIA's interest in finality and the continuing validity of Tellez-Cruz's removal order, we cannot say that the BIA's denial of Tellez-Cruz's claim for equitable tolling was "arbitrary, irrational, or contrary to law." *Guo*, 386 F.3d at 562; *cf. Whiteside v. United States*, 775 F.3d 180, 186 (4th Cir. 2014)

6

(noting in the habeas context that the interest in finality militates against construing changes in law as extraordinary for equitable tolling purposes).

*     *     *

Because the BIA did not abuse its discretion in refusing to equitably toll Tellez-Cruz's deadline based on *Guadalupe*, we will deny the petition to review.